## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARCOS F. SANTIAGO, | ) | CIVIL ACTION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LIEUTENANT KEITH FIELDS | ) | |
| OFFICER KEITH HAMPTON | ) | |
| OFFICER PATRICK HENDERSON | ) | |
| OFFICER CARL HEMMINGS | ) | Case No.:  05-4884 |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE*
### TO EXCLUDE THE REPORT AND TESTIMONY OF JEFFREY MCLAUGHLIN

On March 28, 2005, while Mr. Santiago was shackled in arm and leg irons and lying

prostrate on the floor of his cell, Defendant Fields punched, stomped, and choked Mr. Santiago.

The other Defendants aided Defendant Fields's attack by holding Mr. Santiago on the floor and

failing to intervene to stop Fields' attack.  As a result of Mr. Santiago's complaint that the

aforementioned attack amounted to excessive force against him, the Bureau of Prisons (the

"BOP") ordered Special Investigative Agent Jeffrey McLaughlin ("Mr. McLaughlin") to conduct

an internal investigation.  That investigation culminated in a Report of Investigation ("the

Report") that Mr. McLaughlin wrote on April 14, 2006.  The Report should be excluded at trial,

not only as inadmissible hearsay, but also because the prejudicial effect of admitting the Report

dwarfs its negligible probative value.  This Court should also exclude the anticipated testimony

of Mr. McLaughlin regarding: (a) any statements made to him by any witness during his internal

investigation into the use of excessive force against Mr. Santiago on March 28, 2005; (b) his

opinion of the credibility of Mr. Santiago or Defendants; and (c) any conclusions he drew from

his investigation.  Like the Report, this evidence is inadmissible hearsay, and textbook Rule 403

material; moreover, this evidence should be excluded because it runs afoul of the lay opinion

rule.  *See* Fed. R. Evid. 702.[1]

## STATEMENT OF FACTS

On March 28, 2005, during a 6:00 pm restraint check, Defendant Fields punched,

stomped, and choked Mr. Santiago while he was shackled in arm and leg irons on the floor of his

cell.  The other Defendants held Mr. Santiago down while Defendant Fields attacked him.

Defendants' conduct caused Mr. Santiago to suffer injuries.

As a result of Mr. Santiago's injuries, on March 29, 2005, Mr. McLaughlin conducted a

twenty-minute interview with Mr. Santiago.  *See* McLaughlin Dep. 44:10-21, June 5, 2008,

attached as Exhibit B hereto.  Mr. McLaughlin testified that he does not recall this interview.  *Id.*

at 35:21-24.

In July 2005, the BOP authorized Mr. McLaughlin to open an investigation into whether

Defendant Fields physically abused Mr. Santiago.  *See id.* at 76:2-5; 74:5-9.  Mr. McLaughlin's

investigation was woefully inadequate for a host of reasons:

- First, Mr. McLaughlin never interviewed Mr. Santiago ***after*** the BOP
  authorized the investigation.  *See id.* at 83:19-84:8.

---

[1] On April 30, 2009, Plaintiff's Counsel wrote a letter to Defense Counsel that is attached as Exhibit A.
In that letter, Plaintiff's Counsel wrote, in relevant part:

> Judge Rice's scheduling order requires both sides to file any motions in limine by June 2.  We do
> not want to file any unnecessary motions in limine, as doing so would waste your time, our time,
> and Judge Rice's time.  To prevent that, it would benefit everyone if you could do the following: .
> . . [P]lease advise us whether, at trial, you intend to call Jeffrey McLaughlin as a witness and/or
> offer Mr. McLaughlin's report (bates numbered 0233 - 0240) into evidence.

Ex. A, April 30, 2009 Letter from C. Rosato, Esq. to A. Givhan, Esq.  Defendants never answered this
letter.  Therefore, in an abundance of caution, Mr. Santiago now respectfully moves to preclude
Defendants from introducing into evidence information, testimony, or documents relating to Mr.
McLaughlin's Report or investigation and his resulting conclusions regarding the ultimate issue in this
case.

- <u>Second</u>, Mr. McLaughlin never interviewed Defendant Fields, who was at the center of the investigation; Defendant Hemmings, who is a party to the case; or Officer Griffiths, who was the officer in charge on the day of the incident. *See id.* at 79:20-80:5, 81:18-82:16.

- <u>Third</u>, although the BOP authorized Mr. McLaughlin to open an investigation in July 2005, he waited until April 2006—more than one year after the incident, and three months after Mr. Santiago filed this lawsuit—to interview any witnesses. *See id.* at 74:1-9, 76:2-5.

- <u>Fourth</u>, Mr. McLaughlin testified at his deposition that he had no independent recollection of his investigation. *See id.* at 52:3-21. He further testified that he did not independently recall any of his witness interviews. *See id.* at 80:21-81:4, 103:5-8.

- <u>Fifth</u>, he testified that "it's possible" he never spoke to the agent in California who interviewed Defendant Fields. *See id.* at 92:13-24.

- <u>Sixth</u>, he did not obtain a sworn statement from many witnesses on whose statements he relied in the Report. *See id.* at 94:14-17.

- <u>Seventh</u>, he had no explanation for why Mr. Santiago had severe bruising as depicted in the photographs taken of him the morning after the incident. *See id.* at 108:18-21. Bizarrely, Mr. McLaughlin speculated that "if the situation occurred as he alleges, there would be more injuries" evident on Mr. Santiago's body. *See id.* at 112:13-113:1.

Mr. McLaughlin's investigation culminated in a Report of Investigation dated April 14, 2006, attached hereto as Exhibit C. In that Report, Mr. McLaughlin concluded that "Lieutenant Fields did not assault inmate Santiago" and that since "staff acted in accordance with the Use of Force Policy, no charges are sustained." Ex. C at 0234, 0239.

The basis for Mr. McLaughlin's conclusion was nothing more than a credibility determination. He thought the corrections officers—who were his colleagues at FDC Philadelphia—were more believable than Mr. Santiago. *See* Ex. B at 12:9-14; 87:21-88:14. Mr. McLaughlin believed that Mr. Santiago was lying. *Id.* at 95:5-18. He "believe[d] that Santiago was not happy with [his] situation" and "had reasons to fabricate" the attack. *Id.* at 95:23-96:20. By contrast, Mr. McLaughlin believed the corrections officers were "obligated to tell the truth"

because they worked in law enforcement.  *See id.* at 97:9-98:1.  The rest of the Report consisted

of the regurgitated out-of-court statements of witnesses, including those Mr. McLaughlin

interviewed more than one year after the attack on Mr. Santiago.

## ARGUMENT

### I.     MR. MCLAUGHLIN'S TESTIMONY IS INADMISSIBLE HEARSAY AND LAY OPINION, AND HIGHLY PREJUDICIAL.

At trial, Defendants may attempt to introduce into evidence the testimony of Mr.

McLaughlin regarding: (a) statements made to him by any witness during his internal

investigation into the use of excessive force against Mr. Santiago on March 28, 2005; (b) his

opinion of the credibility of Mr. Santiago and Defendants; and (c) conclusions he drew from his

investigation.  This testimony is inadmissible because it is hearsay, impermissible lay opinion

testimony, and unduly prejudicial to Mr. Santiago.

### A.     Mr. McLaughlin's Testimony About What Witnesses Told Him During His Internal Investigation Is Inadmissible Hearsay.

To the extent Defendants would offer Mr. McLaughlin to testify about what Defendants

or other witnesses told him in the course of his investigation, that testimony constitutes hearsay

not covered by any exception, *see* Fed. R. Evid. 802.  Accordingly, any testimony by Mr.

McLaughlin about what others told him in the course of his investigation or otherwise is hearsay

and should be excluded.

### B.     McLaughlin's Opinion Of Santiago's And Defendants' Credibility Is Inadmissible.

To the extent Defendants would offer Mr. McLaughlin to opine that Defendants are

credible or that Mr. Santiago is not credible, that testimony would likewise be inadmissible.  Mr.

McLaughlin's opinion on the credibility of other witnesses would invade the province of the jury

and violate Federal Rule of Evidence 701.

Courts of Appeals, including the Third Circuit, have roundly rejected the appropriateness of testimony bearing on the credibility of another witness.  *See United States v. Harris*, 471 F.3d 507, 512 (3d Cir. 2006) ("questions [about the veracity of other witnesses] invade the province of the jury and force a witness to testify as to something he cannot know, i.e., whether another is intentionally seeking to mislead the tribunal"); *see also United States v. Gaines*, 170 F.3d 72, 81 (1st Cir. 1999) (holding credibility judgments are for the jury, not witnesses);  *United States v. Sanchez-Lima*, 161 F.3d 545, 548-49 (9th Cir. 1998) (lay opinion evidence regarding the credibility of another witness is inadmissible); *United States v. Forrester*, 60 F.3d 52, 63 (2d Cir. 1995) (witness credibility is reserved exclusively for jury determination and a witness may not give lay opinion testimony regarding the credibility of another witness).

Moreover, Mr. McLaughlin has not been identified by Defendants as an expert, so his opinion of Mr. Santiago's and Defendants' credibility would constitute lay witness testimony pursuant to Federal Rule of Evidence 701.  *See* Fed. R. Evid. 701.  A lay witness is permitted to testify about his opinions ***only*** if they are "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."  Fed. R. Evid. 701(b).

In *United States v. Kleinpaste*, the appellant challenged his conviction for tax law violations, arguing that the district court wrongly excluded lay witness opinion testimony about his sincerity in his belief that he did not have to pay taxes.  Civ. A. No. 03-2678, 2005 WL 524949, at *3-4 (3d Cir. Mar. 7, 2005).  The Third Circuit held that the district "court properly limited lay witness testimony on perceptions of Kleinpaste's sincerity" because these opinions "would not have aided the jury or clarified an issue that the jury otherwise would not have been competent to understand."  *Id.* at *4.  Because the jury "could understand, and assess,

Kleinpaste's testimony on this central issue," the appellate court reasoned, "the [trial] court properly excluded lay opinion testimony as irrelevant." *Id.*

Mr. McLaughlin's testimony regarding his opinions of Defendants' and Mr. Santiago's credibility would not aid the jury or clarify an issue that the jury would not otherwise understand. Therefore, Mr. McLaughlin should be precluded from offering his lay opinion about Mr. Santiago's and Defendants' credibility.

C. **Mr. McLaughlin's Opinion About The Events Of March 28, 2005 Is Inadmissible.**

To the extent Defendants would offer Mr. McLaughlin to opine that no wrongdoing occurred on March 28, 2005, this testimony is also inadmissible for two reasons: first, his conclusion is not rationally based on his perception; and second, his conclusion is not helpful to the jury.

1.   Mr. McLaughlin's Conclusion Is Not Rationally Based On His Perception.

Lay witness opinions must be rationally based on the perception of the witness. *See* Fed. R. Evid. 701(a). In other words, a lay witness must have "firsthand knowledge of the factual predicates that form the basis for the opinion" for it to be admissible. *See Hirst v. Inverness Hotel Corp.,* 544 F.3d 221, 225-28 (3d Cir. 2008) (reversing trial court for allowing defendant company's president to offer his lay opinion about what caused plaintiff's injuries where his opinion was not based on personal perception); *see also Gov't of Virgin Islands v. Knight*, 989 F.2d 619, 629 (3d. Cir. 1993) (concluding that "[t]he district court properly excluded the investigating police officer's opinion *because he did not observe the assault*"); *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001) (holding that when a law enforcement officer is not qualified as an expert by the court, her testimony is admissible as lay opinion only when the law enforcement officer is a participant in the events at issue, has personal knowledge of the events,

or observed the events as they occurred); *McCrary v. N.J. Transit Rail Operations, Inc.*, Civ. A. No. 05-88, 2008 WL 2885872, at *5 (D.N.J. July 23, 2008) (lay opinions based on what the witness "has '*been told*'" or lacking a "rational connection" to the witness's perceptions were inadmissible); *Reveron v. Tycom, Inc.*, Civ. A. No. 02-3599, 2004 WL 3186600, at *4-5 (D.N.J. Sept. 30, 2004) (lay opinion "based on speculation, hearsay and inferences" that would "not put the trier of fact in possession of an accurate reproduction of the event" was inadmissible).

Here, the ultimate issue is whether Defendants attacked Mr. Santiago during the 6:00 pm restraint check on March 28, 2005.  Mr. McLaughlin did not observe the March 28, 2005 6:00 pm restraint check.  Mr. McLaughlin not only lacks firsthand knowledge of the incident but has further admitted to lacking any independent memory of conducting an investigation into the attack on Mr. Santiago.  Accordingly, Mr. McLaughlin should be precluded from testifying as to his lay opinion about what occurred during the attack.

### 2. Mr. McLaughlin's Opinion Would Be Unhelpful To The Jury.

To be admissible, lay opinion testimony must also be helpful to the jury.  *See* Fed. R. Evid. 701(b).  While lay opinion testimony is not inadmissible merely because it pertains to an ultimate issue, *see* Fed. R. Evid. 704(a), "'seldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness' and the witness turns into little more than an 'oath helper.'"" *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 226 (3d Cir. 2008) (quoting *Mitroff v. Xomox Corp.*, 797 F.2d 271, 276 (6th Cir. 1986)).

In *Hirst*, a husband and wife sued the security services company employed by the resort at which an intruder raped the wife.  *Id.* at 223.  The district court admitted lay opinion by the company's president on the issue of whether inadequate security caused the incident.  *See id.* at

227.  The Circuit Court reversed, finding the president's opinion was improperly admitted because it not only was based on "second-hand" information, but also "provided the jury with little more than a self-serving, conclusory opinion as to what result it should ultimately reach." *Id.* at 226-27.  Put another way, lay opinion testimony is inadmissible if it usurps the jury's role of independently evaluating the evidence and drawing its own conclusion.

Here, as in *Hirst*, Mr. McLaughlin's lay opinion testimony would usurp the jury's role. His conclusion whether Defendants attacked Mr. Santiago is not helpful because it simply tells the jury what decision to reach.  Therefore, Mr. McLaughlin should be precluded from testifying about his conclusion in the investigation.

### D.     Mr. McLaughlin's Testimony Would Unfairly Prejudice Mr. Santiago.

Finally, Mr. McLaughlin's anticipated testimony about what he was told in the course of his investigation, his opinions about Defendants' and Mr. Santiago's credibility, and his conclusions about what happened, should be excluded because any probative value "is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury." *See* Fed. R. Evid. 403.   Because of Mr. McLaughlin's qualifications as an investigator and his experience in the prison system, it is overwhelmingly likely that the jury would rely heavily on Mr. McLaughlin's inappropriate testimony regarding the events at issue here.  The prejudice to Mr. Santiago as a result of Mr. McLaughlin's testimony would far outweigh the questionable probative value of Mr. McLaughlin's testimony.  *See Sallenger v. City of Springfield*, Civ. A. No. 03-3093, 2007 WL 2683791, at *1 (C.D. Ill. Sept. 4, 2007) (granting motion to exclude evidence of investigations of the incident resulting in the underlying excessive force claim because "there is a substantial risk that such evidence would result in jury confusion or the possibility that the jury would base its decision on an improper basis"); *see also Thompson*

*v. City of Chicago*, Civ. A. No. 01 C 8883, 2004 WL 5655801, at *1 (N.D. Ill. July 6, 2004)

(granting a motion *in limine* to exclude "the investigators' testimony or opinions regarding the

internal police investigation" because "the probative value of such evidence is substantially

outweighed by the danger of unfair prejudice").

Here, the probative value of Mr. McLaughlin's credibility determinations, the

conclusions he drew, or what witnesses told him would be marginal at best.  First, as discussed

above, Mr. McLaughlin's investigation was grossly inadequate.  He never interviewed Mr.

Santiago during his investigation; he failed to interview the lead attacker, Defendant Fields; and

he had no recollection of communicating with the agent who did speak to Defendant Fields.

Second, Mr. McLaughlin delayed opening his investigation until more than a year after the

incident, and nine months after the BOP's authorization.  Third, Mr. McLaughlin has no

independent recollection of his investigation or the interviews he conducted, rendering his

testimony worthless.  *See supra* at pp. 2-3.  The marginal probative value of Mr. McLaughlin's

anticipated testimony related to his shoddy investigation would be substantially outweighed by

the severe prejudicial effect to Mr. Santiago.  There is a substantial risk that the jury would be

confused by or improperly base its decision on Mr. McLaughlin's testimony.  Therefore, the

Court should preclude Defendants from introducing Mr. McLaughlin's testimony on these

issues.

## II.     THE REPORT IS INADMISSIBLE HEARSAY AND HIGHLY PREJUDICIAL.

At trial, Defendants may attempt to introduce Mr. McLaughlin's Report into evidence,

but the Report's admission would serve only to distract the jury and prevent it from reaching its

own conclusion about what occurred on March 28, 2005.  Courts routinely exclude prison

internal investigation reports in cases involving use of excessive force.  In fact, in a prisoner civil

rights case in this district, *the defendants conceded* that that kind of report was inadmissible.

*Whichard v. Baylor*, No. 01-CV-148, 2004 WL 1490360, at *1 n.1 (E.D. Pa. July 1, 2004)

(granting an inmate's motion *in limine* to exclude the conclusions of a prison internal

investigation report regarding an excessive use of force). Here, the Report should be excluded

for at least two independent reasons. First, the Report is hearsay that does not fall within an

exception. Second, the probative value of the Report is at best marginal and would be

substantially outweighed by the severe prejudice its admission would cause Mr. Santiago.[2]

A.      **The Report Is Inadmissible Hearsay.**

The Report contains hearsay in the form of "statement[s], other than one made by the

declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the

matter asserted." *See* Fed. R. Evid. 801(c). Furthermore, statements made by witnesses to Mr.

McLaughlin are hearsay within hearsay. *See* Fed. R. Evid. 805. Hearsay evidence is not

admissible unless it falls under one of the exceptions within the Federal Rules of Evidence. *See*

Fed. R. Evid. 802. Defendants may argue that the Report is either a business record or a public

record in a civil action, s*ee* Fed. R. Evid. 803(6); Fed. R. Evid. 803(8)(C), but such an argument

would be in error.

1.      **The Report Is Not A Business Record.**

Federal courts routinely exclude internal investigative reports in prisoner civil rights

cases because they do not constitute business records. A business record is admissible if "made

at or near the time" of the event, "kept in the course of a regularly conducted business activity,"

and made in "the regular practice of that business activity," "unless the source of information or

---

[2]      Moreover, the Report, like any testimony Mr. McLaughlin may offer at trial, constitutes improper lay opinion, and is therefore inadmissible under Federal Rule of Evidence 701. *See* Argument Section I.B, *supra*

the method or circumstances of preparation indicate lack of trustworthiness." Fed. R. Evid.

803(6).

Here, the Report is not a business record for two reasons. First, Mr. McLaughlin did not

write the Report at or near the time of the attack on Mr. Santiago. A report written "months

after" the event "does not come within the 'business records' exception to the hearsay rule."

*Gilmour v. Strescon Indus., Inc.*, 66 F.R.D. 146, 150 (E.D. Pa. 1975). Here, the Report was

written *more than a year* after the attack. Second, the Report's sources of information and

methods of preparation indicate a lack of trustworthiness. *See* Fed. R. Evid. 803(6). It is well-

settled that reports "prepared by or relying on the testimony [of] self-interested officers have

insufficient indicia of trustworthiness to be admissible under the business records exception."

*Giles v. Rhodes*, No. 94-6385, 2000 WL 1425046, at \*9 (S.D.N.Y. Sept. 27, 2000); *see also*

*Romano v. Howarth*, 998 F.2d 101, 108 (2d Cir. 1993) (holding that the trial court erred in

admitting prison "progress notes" that relied on the defendant corrections officers, whose

"motive to fudge the truth of what really happened in Romano's cell" obliterated the notes'

"requisite degree of trustworthiness").

### B.    The Report Is Not A Public Record.

Federal courts routinely exclude internal investigation reports in prisoner civil rights

cases because those reports do not constitute public records. Here, the Report is not a public

record for two independent reasons. First, as discussed above, the Report is untrustworthy.

While courts may admit hearsay documents that consist of "factual findings resulting from an

investigation made pursuant to authority granted by law," courts must exclude such evidence

when "*the sources of information or other circumstances indicate lack of trustworthiness*." Fed.

R. Evid. 803(8)(C) (emphasis added).

In evaluating the trustworthiness of an alleged public record, courts generally look to four factors: "(1) the timeliness of the investigation; (2) the special skill or experience of the reporter; (3) whether a hearing was held in conjunction with the investigation, the level at which the hearing was conducted, and the procedures invoked; and (4) any motive on the part of the informant that could interfere with accuracy." *Lewis v. Velez*, 149 F.R.D. 474, 487 (S.D.N.Y. 1993) (citing Fed. R. Evid. 803 advisory committee's note).

In *Lewis*, an inmate brought an action against a corrections officer for allegedly attacking him. *Id.* at 478. The inmate moved to exclude an investigative report by prison officials about the alleged attack. *Id.* at 485. Citing the four factors listed above, the district court granted the plaintiff's motion and excluded the report. The court noted that the prison officials wrote the report in a timely manner, about a month and a half after the incident. *Id.* at 487. However, the remaining three factors cut against admission: first, the administrative hearing—held two days after the incident to assess charges that the plaintiff assaulted the staff—was not a basis for the investigation, potentially lacked procedural safeguards, and no record of it was produced. *Id.* at 488. Second, the report's trustworthiness was undercut by the "strong motivation on the part of the defendants to clear themselves of wrongdoing" in the probable impending litigation. *Id.* at 489. The court reasoned that the corrections officers had a strong motive to lie because they feared a lawsuit and being fired. *See id.* at 488-89. Last, the investigating officer lacked training in investigative skills. *Id.* at 487. *See also Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1342 (3d Cir. 2002) (applying the same four factors); *Tinsley v. Lomax*, No. 90-15662, 1994 WL 441835, at *2-3 (9th Cir. Aug. 16, 1994) (affirming the district court's exclusion of a prison incident report containing inadmissible hearsay statements by the hearing officer and inmate witnesses, because it was untrustworthy under Rule 803(8)(C)).

Here, while Mr. McLaughlin had investigative experience, the other three factors in the trustworthiness analysis cut squarely against admitting the Report.  First, Mr. McLaughlin's Report was untimely.  Mr. McLaughlin waited until April 2006—more than a year after the incident—to open his investigation.  Second, no hearing—other than the unrelated BOP disciplinary hearing into Mr. Santiago's spitting at Defendant Fields—occurred in conjunction with the investigation.  Third, Defendants had strong motives to lie to Mr. McLaughlin: criminal prosecution, termination, and civil liability were all risks had they told the truth.  Moreover, Mr. McLaughlin, who knew and worked with each defendant, had a motive to distort what happened or to overlook known or suspected misrepresentations.  Had Mr. McLaughlin conceded Defendants' wrongdoing, his mismanaged and belated investigation would have reflected adversely on him.  In sum, the Report is untrustworthy and should be excluded.

Further, the Report does not fit within the public records exception because it simply regurgitates hearsay statements made to Mr. McLaughlin and accordingly constitutes hearsay within hearsay.  Statements in an investigative report that are otherwise inadmissible hearsay do not "circumvent the hearsay rule" merely because they appear in a report.  In *Lewis*, the court excluded a second internal report because it "appear[ed] merely to summarize the hearsay statements and reports made by the correction officers involved in the incident and to offer the conclusion that the officers' use of force was proper." 149 F.R.D. at 489; *see also Eng v. Scully*, 146 F.R.D. 74, 79-80 (S.D.N.Y. 1993) (granting motion *in limine* to exclude an investigative report by the state Department of Correctional Services Inspector General's Office because it contained double hearsay).

Hearsay statements cannot be exempted from the hearsay bar simply because they were related to a government officer or investigator.  *Stolarczyk v. Senator Int'l Freight Forwarding*,

13

376 F. Supp. 2d 834, 839 (N.D. Ill. 2005). Indeed, evidence reported in a government document is only admissible to the extent that the maker of the document could testify to that evidence in court. *See Denny v. Hutchinson Sales Corp.*, 649 F.2d 816, 821 (10th Cir. 1981).[3]

      **B.**      **Prejudice To Mr. Santiago Substantially Outweighs The Report's Marginal Probative Value.**

Finally, the Report is inadmissible because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury." *See* Fed. R. Evid. 403. The Report is the result of a cursory and biased investigation undertaken more than a year after the attack on Mr. Santiago. Mr. McLaughlin interviewed neither Defendant Fields, Mr. Santiago's lead attacker, nor Mr. Santiago himself. Accordingly, the probative value of the Report is highly questionable. On the other hand, the unsubstantiated conclusions drawn by the report are deeply damaging to Mr. Santiago's case. *See Thompson*, 2004 WL 5655801, at *1 (granting motion to exclude evidence of the findings from an internal police investigation of the incident because the "probative value of such evidence is substantially outweighed by the danger of unfair prejudice and jury confusion, pursuant to Rule 403"); a*ccord Wood v. Marion County Sheriff*, Civ. A. No. 1:02CV1450-RLY-VSS, 2005 WL 1528226, at *4

---

[3]  *Clark v. Clabaugh*, 20 F.3d 1290 (3d Cir. 1994) further supports excluding Mr. McLaughlin's report. There, the Third Circuit ruled that a state police report favorable to the plaintiffs could be considered by the district court when it ruled on the defendants' summary judgment motion. *Id*. at 1294-95. In so ruling, the court emphasized that, unlike here, the report bore no indicia of untrustworthiness; indeed, the district court itself had made an "implicit finding" under Federal Rule of Civil Procedure 52(a) that "no special bias impeded a fair investigation or entered into the preparation of the" report. *Id.* at 1295. The police officers who wrote the report in *Clark*, moreover, "interviewed representatives from all factions involved" and "achieved some measure of balance between opposing perspectives" in their report. *Id.* Here, in contrast, Mr. McLaughlin talked with Mr. Santiago just once for twenty minutes the day after the incident before he was asked to complete an investigation, failed to interview him during the investigation, which occurred a year later, and failed to interview Defendant Fields, Mr. Santiago's lead attacker, even once. Moreover, in *Clark*, the court noted that no bias was imputed from the interviewees to the authors of the report. *Id.* By contrast, bias should be imputed from Defendants to Mr. McLaughlin, who not only worked with Defendants but also made a credibility determination that Defendants were believable and Mr. Santiago was not believable.

(S.D. Ind. June 23, 2005) (affirming decision to exclude internal affairs report in part because "its admission would have placed undue emphasis on its contents" in violation of Rule 403).

Here, the Report's probative value, which is marginal at most, is outweighed by an extreme danger of unfair prejudice to Mr. Santiago.  The Report is prejudicial because it places an official imprimatur on Mr. McLaughlin's conclusions regarding the very issue the jury must determine: whether Defendants used excessive force against Mr. Santiago.  Moreover, admitting the investigative report into evidence would require a distracting mini-trial about whether Mr. McLaughlin conducted a thorough investigation, a fact which has absolutely no bearing on the ultimate issue for trial and would serve only to distract the jury.  Accordingly, the Report should be excluded under Rule 403.

<div align="center">

**<u>CONCLUSION</u>**

</div>

For the foregoing reasons, Mr. Santiago respectfully requests that this Court grant his motion *in limine*.

Dated:  June 2, 2009

<div style="margin-left: 40%;">

*/s/ Catherine J. Rosato*
Stephen D. Brown
Catherine J. Rosato
Luke A. Pazicky
Joshua Richards
Dechert LLP
2929 Arch Street
Philadelphia, PA 19104-2808
(215) 994-4000

*Attorneys for Plaintiff*

</div>